**RECORD NO. 23-3126**
**[ORAL ARGUMENT JANUARY 30, 2025 ]**

In The

# United States Court Of Appeals
## For The D.C. Circuit

## UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

## GERARDO GONZALEZ-VALENCIA,

*Defendant-Appellant.*

### ON APPEAL FROM THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

—————————

### REPLY BRIEF OF APPELLANT

—————————

**Devin Burstein**
**WARREN & BURSTEIN**
**(619) 234-8467**
**501 W. Broadway, Ste. 240**
**San Diego, CA 92101**
**db@wabulaw.com**

*Counsel for Appellant*

## TABLE OF CONTENTS

**Page(s)**

Table of Authorities ................................................................... ii

I.    The factual record ............................................................ 1

II.   Mr. Gonzalez-Valencia's motion to dismiss .................................... 4

III.  The Court should order a limited remand under 28 U.S.C. § 2106 to consider the changed Criminal History Category ........................... 5

IV.   The district court erred in failing to consider Uruguay's extradition condition that Mr. Gonzalez-Valencia not receive a life sentence ................................................................ 12
      A.    Relevant facts................................................... 12
      B.    The district court's errors...................................... 13
      C.    The government's responses are misplaced ........................ 16

V.    The district court erred in calculating the applicable offense level ................................................................ 20
      A.    The district court plainly erred in applying two enhancements barred by ex post factor principles ............................. 20
      B.    The district court plainly erred in applying two enhancements based on entirely foreign product........................... 27

VI.   Conclusion ................................................................. 33

CERTIFICATE OF COMPLIANCE ....................................................... 35

CERTIFICATE OF SERVICE .......................................................... 36

i

# TABLE OF AUTHORITIES

**Federal Cases**                                                                                  **Page(s)**

*Copeland v. Ryan,*
   852 F.3d 900 (9th Cir. 2017)............................................................. 32

*Hemphill v. New York,*
   595 U.S. 140 (2022)........................................................................ 17

*Molina-Martinez v. United States,*
   578 U.S. 189 (2016)................................................................... 26, 27

*Murdoch v. Castro,*
   609 F.3d 983 (9th Cir. 2010)............................................................ 16

*Peugh v. United States,*
   569 U.S. 530 (2013)............................................................. 20, 22, 26

*RJR Nabisco, Inc. v. European Cmty.,*
   579 U.S. 325 (2016)........................................................................ 31

*Robinson v. Cheney,*
   876 F.2d 152 (D.C. Cir. 1989)......................................................... 1, 2

*Rosales-Mireles v. United States,*
   585 U.S. 129 (2018).............................................. 11, 21, 27, 33

*Trans Pacific Policing Agreement v. United States Customs,*
   177 F.3d 1022 (D.C. Cir. 1999)......................................................... 11

*United States v. Arrington,*
   763 F.3d 17 (D.C. Cir. 2014)............................................................... 7

*United States v. Azeem,*
   946 F.2d 13 (2d Cir. 1991) ............................................................... 28

*United States v. Baez,*
   349 F.3d 90 (2d. Cir. 2003) .............................................................. 15

*United States v. Benton,*
   98 F.4th 1119 (D.C. Cir. 2024)......................................................... 20

*United States v. Bigley,*
   786 F.3d 11 (D.C. Cir. 2015)............................................................. 19

*United States v. Borda,*
   848 F.3d 1044 (D.C. Cir. 2017)......................................................... 15

*United States v. Chunza-Plazas,*
   45 F.3d 51 (2d Cir. 1995) ................................................................. 29

*United States v. Claybron,*
   606 F.3d 1303 (11th Cir. 2010).......................................................... 7

*United States v. Crace,*
    207 F.3d 833 (6th Cir. 2000) .................................................................. 10
*United States v. Dorcely,*
    454 F.3d 366 (D.C. Cir. 2006) .............................................................. 22
*United States v. Delgado-Garcia,*
    374 F.3d 1337 (D.C. Cir. 2004) .............................................................. 5
*United States v. Estrada,*
    904 F.3d 864 (9th Cir. 2018) ............................................................ 3, 4
*United States v. Flores,*
    912 F.3d 613 (D.C. Cir. 2019) .............................................................. 29
*United States v. Flores,*
    995 F.3d 214 (D.C. Cir. 2021) .............................................................. 30
*United States v. Gary,*
    291 F.3d 30 (D.C. Cir. 2002 ........................................................... 21, 22
*United States v. Goolsby,*
    908 F.2d 861 (11th Cir. 1990) .............................................................. 10
*United States v. Head,*
    817 F.3d 354 (D.C. Cir. 2016) ......................................................... 18, 27
*United States v. Lawrence,*
    662 F.3d 551 (D.C. Cir. 2011) .............................................................. 21
*United States v. Leyva,*
    916 F.3d (D.C. Cir. 2019) ................................................................... 23
*United States v. Lombard,*
    72 F.3d 170 (1st Cir. 1995) ................................................................ 34
*United States v. Mack,*
    841 F.3d 514 (D.C. Cir. 2016) ......................................................... 15, 16
*United States v. Martinez,*
    606 F.3d 1303 (11th Cir. 2010) ............................................................. 7
*United States v. Martinez,*
    931 F.2d 851 (11th Cir. 1991) .............................................................. 10
*United States v. McCants,*
    554 F.3d 155 (D.C. Cir. 2009) .............................................................. 14
*United States v. McKeever,*
    824 F.3d 1113 (D.C. Cir. 2016) ............................................................ 14
*United States v. Moore,*
    486 F.2d 139 (D.C. Cir. 1973) (en banc) ............................................. 8, 9
*United States v. Rauscher,*
    119 U.S. 407 (1886) ......................................................................... 19

iii

*United States v. Rhodes,*
    106 F.3d 429 (D.C. Cir. 1997)................................................................. 8
*United States v. Spence,*
    923 F.3d 929 (11th Cir. 2019)........................................................ 29, 30
*United States v. Surratt,*
    797 F.3d 240 (4th Cir. 2015)................................................................. 33
*United States v. Thompson,*
    994 F.2d 864 (D.C. Cir. 1993)................................................................. 9
*United States v. Vallone,*
    752 F.3d 690 (7th Cir. 2014)........................................................ 21, 22

## Federal Statutes

18 U.S.C. § 3553 ...................................................................... 15, 16, 32

18 U.S.C. § 3582(c)(2) ........................................................................ 6, 7

28 U.S.C. § 2106 .......................................................... 5, 7, 8, 11, 34

## Federal Rules

Fed. R. Crim. P. 32(i)(3)(B) ............................................................. 14, 18

Fed. R. Crim. P. 51 .................................................................................. 18

## United States Sentencing Guidelines

U.S.S.G. § 1B1.3 ..................................................................................... 27

U.S.S.G. § 2B1.1 ..................................................................................... 32

U.S.S.G. § 2D.1.1 ..................................................................... 20, 24, 27

U.S.S.G. § 4A1.1 ................................................................................... 5, 6

U.S.S.G. § 4A1.2 ..................................................................................... 6

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

No. 23-3126

UNITED STATES OF AMERICA,

Appellee,

v.

GERARDO GONZALEZ-VALENCIA,

Appellant.

**APPELLANT'S REPLY BRIEF**

## I.
### The factual record.

The government's factual recitation paints an inaccurate picture. In presenting the cooperating witnesses' often exaggerated (sometimes invented) claims as if they were objective facts, the government goes too far. As this Court has observed, "[a] witness seeking [] leniency may have an interest in cooperating with the Government, even if it means giving a false account[.]" *Robinson v. Cheney*, 876 F.2d 152, 158 (D.C. Cir.

1

1989).  Here, there were undoubtedly false accounts.  To be clear, Mr. Gonzalez-Valencia admits participating in a drug conspiracy, but that does not mean all the informants' stories were completely factual or even based in fact.

For example, the government asserts that Mr. Gonzalez-Valencia "directed over 200 subordinates." GB:15.[1]  But that farfetched statement did not come from a reliable source; it came from Oscar Nava Valencia, former leader of the Milenio cartel, who was testifying to receive a sentencing reduction.  JA704.  It was unsupported by any documentary evidence, Mexican government reports, or other trustworthy witness.  He seemingly pulled the number from thin air, though it is a convenient multiplier of the number of people Mr. Nava Valencia admitted murdering.  JA695-98, 735-36.

The government continues in this vein throughout, asserting that Mr. Gonzalez-Valencia required others to carry rifles and "ordered the assassination of a member of a rival drug trafficking organization."

---

[1] "GB" is the government's brief.  "AOB" is the opening brief.  "SA" is the Supplemental Appendix.  Citations are to the page numbers added by the case-filing system.  Within quotations, all emphasis is added, and citations, quotations, and punctuation marks are omitted.

GB:17.  But these are not "facts" in the sense of a thing known to be true; they are the unsubstantiated claims of informants singing for their supper.  Mr. Gonzalez-Valencia was not charged with, or convicted of, any of this conduct in Mexico or the United States.  It is pure allegation, from inherently unreliable and biased sources, not meaningfully capable of substantiation in the limited setting of a sentencing hearing.

This context matters because numerous courts have rightly "stressed repeatedly that informants as a class, although indispensable to law enforcement, are oftentimes untrustworthy." *United States v. Estrada*, 904 F.3d 854, 864 (9th Cir. 2018).  At the very least, "when an informer testifies, his[] testimony should be considered with caution." Criminal Jury Instructions for the District of Columbia, Instruction 2.205.

This should not be a controversial proposition.  But the government ignores the point and the character of its witnesses.  Its factual recitation proceeds on the assumption that the motley crew of admitted drug lords and murderers it assembled to testify at the sentencing suddenly became forthright men.  As a result of this false premise, the government strays into flights of fancy.  And because the Court should be "wary of any

witness receiving a benefit for testifying," it should be equally wary of any conduit for those witnesses' testimony. *Estrada*, 904 F.3d at 865.

There is one additional factual matter that warrants attention. The government claims, "[w]hile Gonzalez-Valencia was detained in Uruguay, he continued to use and threaten violence." GB:19. This is half the story. The government neglects to mention that Uruguay kept Mr. Gonzalez-Valencia in deplorable conditions, initially housing him naked in freezing temperatures. JA1032, 1237-38. His unfortunate conduct came in response to this "torture." JA1032, 1237-38.[2] While that does not justify threats of violence, the whole story is always more reliable than half.

## II.
### Mr. Gonzalez-Valencia's motion to dismiss.

Mr. Gonzalez-Valencia previously acknowledged that his unconditional guilty plea may have waived the ability to appeal the denial of his motion to dismiss based on an invalid extradition proceeding. AOB:62. The government responds with additional case law

---

[2] The district court misspoke in suggesting that threats were made *after* Mr. Gonzalez-Velencia was extradited to the United States, JA1513-14. *All* the referenced conduct occurred in Uruguay. JA:1196.

4

establishing that "by entering an unconditional guilty plea after the district court denied his motion to dismiss the indictment," Gonzalez-Valencia's counsel "waived his ability to challenge that ruling on appeal." GB:30-31; *see United States v. Delgado-Garcia*, 374 F.3d 1337, 1341 (D.C. Cir. 2004).    As such, acknowledging the government's point, Mr. Gonzalez-Valencia does not address the merits.[3]

### III.
### The Court should order a limited remand under 28 U.S.C. § 2106 to consider the changed Criminal History Category.

Moving to the sentencing claims, if sentenced today, Mr. Gonzalez-Valencia would be in Criminal History Category II, not III, due to a retroactive change to the Sentencing Guidelines.    The government agrees: "The Sentencing Commission amended U.S.S.G. § 4A1.1(d) after Gonzalez-Valencia was sentenced so [he would] no longer receive any status points for committing the current offense while on escape status. The Sentencing Commission made the amendment retroactive."  GB:75.

The Commission did so based on empirical research showing "that status points add little to the overall predictive value [of recidivism rates]

---

[3] If the Court determines the claim can proceed despite the unconditional plea, Mr. Gonzales-Valencia respectfully requests the opportunity for supplemental briefing on the merits.

associated with the criminal history score." U.S.S.G. Supp. to App. C,
Amend. 821, Reason for Amendment, Part A. And that research applied
"with equal force to individuals who are already sentenced." U.S.S.G.
Supp. to App. C, Amend. 825, Reason for Amendment (1).

Based on this change, Mr. Gonzalez-Valencia now has just three
points for a single drug-related conviction over 25 years ago, which
retroactively places him in category II. JA446, 1468; U.S.S.G. §§
4A1.1(a); 4A1.2(e)(1),

The government says this does not matter because, assuming no
other offense-level changes, the lesser category does not reduce the
sentencing range. GB:76-77. From there, it argues that because the
advisory range did not change, Mr. Gonzalez-Valencia would be ineligible
for resentencing under 18 U.S.C. § 3582(c)(2).[4] GB:76-77. On that basis,
the government claims remand is unwarranted.

This is a classic straw man argument, addressing a claim
Mr. Gonzalez-Valencia never made. He has not sought relief under

---

[4] The provision permits defendants to move the *district court* for a
sentencing modification "based on a sentencing range that has
subsequently been lowered by the Sentencing Commission[.]" 18 U.S.C.
§ 3582(c)(2).

section 3582(c)(2), so his ineligibility under that provision is beside the point. Instead, his contention was and remains that the Court should remand under 28 U.S.C. § 2106. AOB:28-29. It provides:

> "The Supreme Court or any other court of appellate jurisdiction may affirm, modify, vacate, set aside or reverse any judgment, decree, or order of a court lawfully brought before it for review, and may remand the cause and direct the entry of such appropriate judgment, decree, or order, or require such further proceedings to be had as may be just under the circumstances."

28 U.S.C. § 2106.

"Courts principally invoke § 2106 to fashion an appropriate remedy on direct appeal." *United States v. Arrington*, 763 F.3d 17, 25 (D.C. Cir. 2014). The statute "unambiguously grants the circuit courts broad discretion[.] . . . [W]e cannot imagine how the appellate court's discretion could be framed more broadly." *United States v. Martinez*, 606 F.3d 1303, 1304 (11th Cir. 2010). Under this broad authority, "§ 2106 gives [] court[s] discretion to remand a cause and require such further proceedings to be had as may be just under the circumstances[]" even without showing that "the district court err[ed]." *United States v. Claybron*, 88 F.4th 1226, 1231 (7th Cir. 2023).

This Court has previously invoked the provision for just that

purpose. In *United States v. Rhodes*, 106 F.3d 429, 430-33 (D.C. Cir. 1997), the Court relied on section 2106 to the government's benefit in remanding for resentencing to allow the prosecution to seek a sentencing enhancement that was previously inapplicable to the defendant because of his convictions.

More on point is *United States v. Moore*, 486 F.2d 1139 (D.C. Cir. 1973) (en banc). The defendant was convicted of drug offenses and sentenced "to concurrent terms of 6 years, and 2-6 years." *Id.* at 1163 (Leventhal, J. concurring to explain the result). On appeal, the Court "conclude[d] the judgment of conviction should be affirmed and the case remanded, in the interest of justice, see 28 U.S.C. § 2106, for further consideration of a disposition under the Narcotic Addict Rehabilitation Act (NARA)." *Id.* at 1160. At the time of sentencing, NARA was a relatively new law allowing alternatives to incarceration. *See id.*

The Court explained: "Our settled jurisprudence calls on us to apply 28 U.S.C. § 2106 so as to order a remand following a sentence when there is a possibility that there was a failure to give NARA dispositions full consideration." *Id.* at 1203. In other words, the Court determined that, in the interest of justice, a limited remand was warranted for the district

court to consider whether to continue the custodial term or impose an alternative under NARA. *See id.* at 1205-06.

The same reasoning applies here. Indeed, it applies more forcefully, given that NARA was available to the district court at the time of the original sentencing in *Moore* – the judge simply failed to give it sufficient consideration, given its relatively new status. Here, the district court did not have the benefit of these retroactive changes, meaning all Mr. Gonzalez-Valencia seeks is a first opportunity for consideration.

Moreover, during sentencing, the district court repeatedly referenced Mr. Gonzalez-Valencia's criminal history, emphasizing that he was in category III. JA1465-68. Importantly, the court never stated it would impose the same sentence regardless of the category. *See by comparison United States v. Thompson*, 994 F.2d 864, 868 (D.C. Cir. 1993) ("Because the judge made it clear he would impose the same sentence under either criminal history category, it would be futile to remand for resentencing.").

This makes sense because criminal history is a key consideration. "[T]he distinction between the calculation of the offense level and the calculation of the criminal history category is important [] as each

calculation concerns a conceptually separate notion related to sentencing." *United States v. Martinez*, 931 F.2d 851, 852 n.1 (11th Cir. 1991). "The criminal history category principally estimates the likelihood of recidivism." *United States v. Crace*, 207 F.3d 833, 838 (6th Cir. 2000). That is, "[a]n offender's criminal history score evaluates the need to increase his sentence incrementally to deter him from further criminal activity." *United States v. Goolsby*, 908 F.2d 861, 863 (11th Cir. 1990).

This is particularly relevant in the context of a life sentence, because a fundamental justification is that the person must be incarcerated forever to prevent future crimes and protect society. The corollary is that the less likely the person is to recidivate, the less need for a life term. That is why the reduced criminal history score directly impacts the analysis. Because a person in category II is statistically less likely to commit future crimes than someone in category III, there is less cause to impose a life sentence on the person in category II.

The district court here has not yet had the opportunity to consider this point or how it might impact its ultimate sentencing decision. After all, the Guidelines range is merely advisory. As such, under the Court's

10

"broad remedial authority [in] § 2106, it makes sense to remand so that the District Court--which is already familiar with the record in this case--can [consider whether the change in category impacts its ultimate conclusion] in the first instance." *Trans-Pacific Policing Agreement v. United States Customs*, 177 F.3d 1022, 1028 (D.C. Cir. 1999).

Such a limited remand, "while not costless, does not invoke the same difficulties as a remand for retrial does. A resentencing is a brief event, normally taking less than a day and requiring the attendance of only the defendant, counsel, and court personnel." *Rosales-Mireles v. United States*, 585 U.S. 129, 140 (2018). Accordingly, because "a decision remanding a case to the district court for resentencing . . . is far less burdensome than a retrial, or other jury proceedings, [it] does not demand such a high degree of caution." *Id.* at 143.

Here, given the minor burden, the gravity of a life term, and the possibility Mr. Gonzalez-Valencia could receive a lesser sentence, the interests of justice weigh heavily in favor of a limited remand under section 2106. There is no appreciable downside.

11

## IV.
### The district court erred in failing to consider Uruguay's extradition condition that Mr. Gonzalez-Valencia not receive a life sentence.

Strong support for this remedy comes from the fact that a remand – limited or not – would also allow the district court to address, in the first instance *on the record*, Mr. Gonzalez-Valencia's argument for a sentence less than life, based on Uruguay's extradition condition.

### A.    Relevant facts.

To review: The Uruguayan court granting extradition wrote: "life in prison . . . *excludes extradition*[.]"  SA:34.  Thus, the extradition was "made upon the conditions that . . . in the event that Gerardo González Valencia is convicted . . . *a life in prison sentence will not be imposed on him*."  SA:35.

Uruguay's Supreme Court of Justice reiterated this point: "the risk of being sentenced to life imprisonment . . . is averted because the Judgment of Court of First Instance . . . conditioned the granting of extradition on the intervening authorities' assurances that, if convicted, GONZÁLEZ VALENCIA *would not be sentenced to death or life imprisonment*[.]"  SA:59.  Thereafter, Uruguay confirmed, "the final judgment [of extradition] established the condition of not applying the

12

sentence of life imprisonment[.]" SA:94.

Based on these statements from Uruguay's judiciary and executive, Mr. Gonzalez-Valencia argued in his sentencing papers that the district court should honor "principles of international comity" by rejecting "the Government's request that [he] be sentenced to life imprisonment." JA1242. He reiterated it was a "condition of the Extradition Order that Mr. Gonzalez-Valencia not be sentenced to life imprisonment[.]" JA1244-45. The government's sentencing memorandum took the opposite position, arguing "the unilateral condition expressed in the Uruguayan court order regarding a life sentence is unenforceable." JA1456.

The district court, however, never ruled on this legal dispute. Nor did it indicate whether it even considered Uruguay's condition in determining the appropriate sentence. Whether or not Uruguay's condition irrevocably bound the district court, failing even to consider a separate sovereign's solemn request, memorialized by its highest court in a written disposition, was error.

## B.   The district court's errors.

First, "[a]t sentencing, the Court [] *must*—for any disputed portion of the presentence report *or other controverted matter*—rule on the

13

*dispute* or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing." Fed. R. Crim. P 32(i)(3)(B); *United States v. McCants*, 554 F.3d 155, 159 (D.C. Cir. 2009) (noting prior reversal based on "the controversies left unaddressed by the District Court").

The parties here had a material dispute about whether Uruguay reasonably believed the United States would accede to its non-life-sentence condition. JA1244-45, 1455-56. If so, as Mr. Gonzalez-Valencia argued, the rule of specialty would prohibit a life sentence. AOB:59-60. If not, as the government argued, the condition would be unenforceable.

Clearly, this was a "controverted matter," and thus, the district court was required to "rule on the dispute." Fed. R. Crim. P 32(i)(3)(B). That never happened. And "[i]n circumstances such as these, when we cannot discern the District Court's disposition of the sentencing [] issue, justice will be best served if we remand the case to afford the trial judge an opportunity to address the issue in the first instance." *United States v. McKeever*, 824 F.3d 1113, 1117 (D.C. Cir. 2016).

Additionally, regardless of whether the district court was *bound* by the condition, at the very least, the district court should have considered

14

Uruguay's strong opposition to a life sentence because "[c]ourts should accord *deferential consideration* to the limitations imposed by an extraditing nation in an effort to protect United States citizens in prosecutions abroad." *United States v. Baez*, 349 F.3d 90, 93 (2d. Cir. 2003).

"Where [as here] a defendant provides a non-frivolous argument for mitigation, the district court *must* consider this argument when pronouncing a sentence." *United States v. Borda*, 848 F.3d 1044, 1071 (D.C. Cir. 2017). "[I]f the sentencing judge fails to respond to a nonfrivolous argument, the presumption of adequate consideration is rebutted." *United States v. Mack*, 841 F.3d 514, 523 (D.C. Cir. 2016).

Uruguay's condition – enforceable or not – was a nonfrivolous basis for mitigation. Indeed, under 18 U.S.C. § 3553(a)(2)(A), the district court was required to impose a sentence that "promote[s] respect for the law." The law of nations, including principles of comity, is "law" deserving "respect," whether or not it is binding in a particular domestic case. To rule otherwise would disserve the Constitution's express recognition that *jus gentium* deserves respect in addition to, and alongside, *jus inter gentes*. U.S. Const. art. I, § 8, cl. 10. Accordingly, the district court erred

15

in failing to address Uruguay's condition, which further supports a remand. *See Mack*, 841 F.3d at 517 ("Part of the sentencing judge's obligation under 3553(c) is to respond to a defendant's nonfrivolous reasons for imposing a different sentence.").

## C.    The government's responses are misplaced.

The government offers several responses. GB:72-75. Each is misplaced.

The government first claims, "Gonzalez-Valencia has not shown that the district court failed to consider the argument." GB:72. But how else – other than pointing to the fact the district court never mentioned the extradition condition during the sentencing hearing – can Mr. Gonzalez-Valencia make this showing? He cannot otherwise prove a negative. The best evidence that the court did not consider the argument is its silence on the issue. *See Murdoch v. Castro*, 609 F.3d 983, 1000 (9th Cir. 2010) (Kozinski, J., dissenting) ("Courts just don't do that kind of work in white ink.").

The government tries to overcome that silence with the district court's passing comment, at the beginning of the hearing, that it reviewed Mr. Gonzalez-Valencia's sentencing documents. GB:73. But this is a red

herring.  The claim on appeal is *not* that the district court failed to review the sentencing papers.  The claim is that there is no evidence the district court factored Uruguay's condition into its analysis.  That is the error.

To this end, "review" is not the same as "consideration."  They are separate analytical steps.  For example, a brief must first be reviewed – i.e., read – before its arguments can be considered – i.e., analyzed – in the context of the relevant fact and law.

The government next says that even if the court failed to consider the extradition condition, relief is unwarranted because Mr. Gonzalez-Valencia "did not [re-]raise the argument at the sentencing hearing." GB:72.  Thus, according to the government, review is for plain error.

But the Supreme Court and the Federal Rules say otherwise.  "Once a federal claim is properly presented, a party can make any argument in support of that claim.  The Court may therefore consider any argument [the defendant] raises in support of his claim" without triggering plain-error review.  *Hemphill v. New York*, 595 U.S. 140, 149 (2022).

In his sentencing memorandum, Mr. Gonzalez-Valencia raised the extradition condition as a reason not to impose a life sentence.  Once he made that claim, he did not need to object again when the district court

imposed a life sentence; his claim had already been presented and thereby persevered in his papers. As explained in Federal Rule of Criminal Procedure 51, "exceptions to rulings [] of the court are unnecessary."

In any event, even if plain error applied, the outcome should not change. Under Rule 32(i)(3)(B) and this Court's established precedent, failure to resolve the dispute or otherwise consider the extradition condition was plainly erroneous. *See United States v. Head*, 817 F.3d 354, 361 (D.C. Cir. 2016) ("one circumstance in which an error may be plain is if, at the time it was made, a clear precedent . . . established its erroneous character.").

The error also affected the fairness of the proceedings and Mr. Gonzalez-Valencia's substantial rights because a lesser sentence is plausible. Had the court properly weighed Uruguay's condition in the context of international comity, it could have imposed a term less than life, such as the 188 months recommended by the probation department. JA1491.

The government's final argument is that Uruguay's extradition condition was not binding because the United States never expressly

18

agreed. GB:70. It claims, "[e]ven if Uruguay believed that it had conditioned extradition on Gonzalez-Valencia not receiving a life sentence, that unilateral condition would not be enforceable." GB:71.

Mr. Gonzalez-Valencia addressed this argument at length in his opening brief. AOB:51-60. Suffice it to say, the record shows that Uruguay relied on its reasonable interpretation of the diplomatic note that the United States would accept Uruguay's condition. AOB:58-59. Therefore, under the rule of specialty, the condition was binding. *See United States v. Rauscher*, 119 U.S. 407, 419 (1886) ("[i]t is unreasonable that the country of the asylum should be expected to deliver up such person to be dealt with by the demanding government without any limitation, implied or otherwise, upon its prosecution of the party.").

But even if it was unenforceable, as the government argues, this does not cure the district court's error. At the very least, the condition was an important data point – and mitigating factor – in the sentencing analysis. And "[b]ecause the district court failed to consider [this] nonfrivolous claim . . . when it pronounced its sentence, [the Court should] vacate the sentence and remand." *United States v. Bigley*, 786 F.3d 11, 12 (D.C. Cir. 2015).

19

## V.
## The district court erred in calculating the applicable offense level.

The same remedy is required based on the district court's errors in calculating the Sentencing Guidelines.

**A.    The district court plainly erred in applying two enhancements barred by ex post facto principles.**

The district court added two levels for the use of a semisubmersible in 2007 under U.S.S.G. § 2D1.1(b)(3)(B) and two levels for the use of violence in 2005 under section 2D1.1(b)(2).  AOB:41-49.  Neither of these provisions existed at the time of the underlying conduct.  Thus, their application violated the Ex Post Facto Clause.  *See Peugh v. United States*, 569 U.S. 530, 533 (2013).

The government first tries to sidestep the semisubmersible issue, arguing that Mr. Gonzalez-Valencia "invited [the] error by affirmatively agreeing that the enhancement applied."  GB:46.  This is a stretch.

The invited error doctrine typically applies in the context of jury instructions that have either been proposed by the defendant or jointly proposed by the government and the defendant.  *See United States v. Benton*, 98 F.4th 1119, 1130 (D.C. Cir. 2024).  The government does not cite any cases applying the doctrine to offense-level enhancements, and

for good reason. It is not the parties, but "[t]he district court [that] has the ultimate responsibility to ensure that the Guidelines range it considers is correct[.]" *Rosales-Mireles*, 585 U.S. at 138.

Thus, "[a]lthough defense counsel failed to object at sentencing, [Mr. Gonzalez-Valencia] is not now barred from complaining because, the government suggests, the error was 'invited.' Invited error occurs when defense counsel induces the error . . . . At most, [Mr. Gonzalez-Valencia] acquiesced in what he now claims is error, but he did not invite it." *United States v. Lawrence*, 662 F.3d 551, 557 (D.C. Cir. 2011).

On the merits, the government argues that there is no ex post facto issue because the conspiracy continued until 2016, after the enactment of the semisubmersible and use-of-violence enhancements. GB:50. Mr. Gonzalez-Valencia anticipated exactly this argument in the opening brief. AOB:39-40. He acknowledged that there is caselaw pointing to the end of the conspiracy (or other continuing offense) as the trigger for ex post facto considerations. AOB:39-40. And as expected, the government cites additional cases making the same basic point, such as *United States v. Gary*, 291 F.3d 30, 36 (D.C. Cir. 2002) and *United States v. Vallone*, 752 F.3d 690 (7th Cir. 2014). GB:48-49.

But those cases run headlong into controlling Supreme Court authority: "We consider here whether there is an ex post facto violation when a defendant is sentenced under Guidelines promulgated after he committed his criminal *acts* and the new version provides a higher applicable Guidelines sentencing range than the version in place at the time of the offense. *We hold that there is.*" *Peugh*, 569 U.S. at 533. By this clear language, the Supreme Court tied the ex post facto trigger to the *acts* in question, not the end date of the conspiracy. Insofar as this Court's opinion in *Gary* is to the contrary, it is overruled by *Peugh*; and this Court must ignore the Seventh Circuit's *Vallone* opinion insofar as it contradicts *Peugh.*

The government criticizes Mr. Gonzalez-Valencia for relying "solely on the Supreme Court's decision in *Peugh.*" GB:54. But the number of citations does not carry the day. When one statement from our highest court resolves the issue, nothing more is needed. In this Court's words, the "language of the Supreme Court, even if technically dictum, generally must be treated as authoritative." *United States v. Dorcely*, 454 F.3d 366, 375 (D.C. Cir. 2006). *Peugh* controls.

Thus, because the "acts" in question – use of the semisubmersible

and the sole act of violence found by the district court – took place before the subject enhancements existed, their application amounted to a straightforward ex post facto violation.

Added support for this conclusion comes from *United States v. Leyva*, 916 F.3d 14 (D.C. Cir. 2019). GB:54 n.6. There, the government made an identical argument. "Its position [was] that the proper focus is not the date on which [the defendant] committed certain conduct, but rather the last date of the offense of conviction. It then claim[ed] that [because the defendant] pleaded guilty to a conspiracy lasting until August 2012, nearly two years after these Guidelines enhancements were added," there was no ex post facto issue. Reply Brief in Case No. 17-3027 at p. 18.

On appeal, although the Court did not decide the issue, it noted, "applying these enhancements would present a serious Ex Post Facto question[.]" *Leyva*, 916 F.3d at 29. In other words, it was no answer to the Ex Post Facto Clause that the conspiracy lasted until after the enhancements were added. The same is true here.

The government disputes this point, claiming Mr. Gonzalez-Valencia "was on notice that all of his conduct in furtherance of that

offense would be sentenced under the Guidelines in effect when the offense ended." GB:50. But this statement merely highlights the notice – and thus the ex post facto – problem. Mr. Gonzalez-Valencia did not have a crystal ball when the acts were committed. He could not predict what new amendments the Sentencing Commission would enact sometime in the future. Notice of a penalty that does not yet exist is no notice at all. Thus, measured from the time of the conduct, there was no notice, which further demonstrates the ex post facto violation.

In a single paragraph, the government makes one additional argument relating only to the act-of-violence enhancement adopted in 2010. GB:55. It says, "[t]he government presented evidence that Gonzalez-Valencia ordered the murder of Domingo Mendoza Sandoval over an accounting dispute in 2011, JA933-36, JA707; that Los Cuinis were still actively hunting the victim in 2013, JA1014-15; and that he was murdered shortly thereafter, JA936. This established by a preponderance of the evidence that Gonzalez-Valencia 'directed the use of violence,' U.S.S.G. § 2D1.1(b)(2), after the enhancement was adopted in 2010." GB:55-56.

This is a non-starter because the district court did *not* rely on this

24

alleged murder and *never* found that Mr. Gonzalez-Valencia played any role in the alleged crime. Instead, the court based this enhancement *solely* on its finding that, in 2005, Mr. Gonzalez-Valencia participated in ordering others to kill Antonio Guizar Valencia. JA1487-88.

The court said: "Although the government presented evidence of five instances when defendant used -- *allegedly* used violence to further the conspiracy, application of the enhancement requires that the government prove that only one of these incidents occurred by a preponderance of the evidence. *And the government has done that for defendant's role in the murder of Antonio Guizar Valencia.* Thus, I will not address the other ones any further." JA1487.

In this statement, the court first acknowledged that the government *alleged* five acts of violence. Then it found the government proved one that occurred in 2005, before the enhancement was enacted, by a preponderance of the evidence. Thus, that is the only act of violence supporting the enhancement. The court expressly said it was *not* making findings as to the other alleged crimes, precluding the argument that it made an implicit finding.

To avoid this conclusion, the government offers only a footnote

saying, "the court found 'each of the witnesses' to be credible." GB:56 n.7.

JA1472. But that general statement in an unrelated context during a

different part of the hearing does not help the government. What the

court actually said was: "I did find each of the witnesses, presented by

both the government and defense to be credible." GB:1472.

That is a far cry from finding *sub silencio* that Mr. Gonzalez-

Valencia was responsible for a 2013 murder that he forcefully disputed.

JA1231-32.[5] In any event, we know the court did *not* make this finding

because it said it was finding only one act of violence, and that one

happened in 2005. JA1487.

From here, the remainder of the government's opposition fails.

Because the acts at issue took place before the Guidelines contained

enhancements for the semisubmersible and violence, their application

amounted to "an ex post facto violation," *Peugh*, 569 U.S. at 533, and a

"significant procedural error." *Molina-Martinez v. United States*, 578

U.S. 189, 199 (2016). That error was also plain under *Peugh*'s clear

---

[5] In his sentencing memorandum, Mr. Gonzalez-Valencia demonstrated the unreliability of the claim – from a single witness – that he had anything to do with the alleged murder of his brother-in-law. JA1231-32.

language.

Finally, the prejudice is clear. Without the enhancements, the offense level would have been 4 levels lower. At an adjusted offense level of 41, in either category II or III, the sentencing range would no longer be life, but 360-life. This lower range establishes the last two prongs of plain-error review. *See Head*, 817 F.3d at 361; *Molina-Martinez*, 578 U.S. at 198; *Rosales-Mireles*, 585 U.S. at 137-38. Reversal is required.

**B.    The district court plainly erred in applying two enhancements based on entirely foreign conduct.**

The district court also plainly erred in increasing Mr. Gonzalez-Valencia's offense level by two levels for possession of a firearm under section 2D1.1(b)(1) and an additional two levels for use of violence under section 2D1.1(b)(2). JA1485, 1488. Both enhancements were based on conduct taking place entirely in Mexico, not aimed at the United States or any United States victim. JA1485,1487-88.

The government answers that the court was permitted to use these foreign acts because they qualified as relevant conduct under U.S.S.G. § 1B1.3. GB:58. It argues, "the text of § 1B1.3 does not distinguish between relevant conduct taken domestically and abroad and thus does not prohibit consideration of foreign conduct. The specific offense

characteristic guidelines at issue likewise do not carve out conduct committed abroad." GB:58-59.

The government reads too much into silence. As the Second Circuit observed, "[t]he Guidelines section on [relevant conduct] is broadly worded to include all such acts and omissions that were part of the same course of conduct or common scheme or plan, *but does not explicitly address the issue of foreign crimes and activities*." *United States v. Azeem*, 946 F.2d 13, 17 (2d Cir. 1991). For this reason, it cannot support the government's claim.

The government, therefore, tries a different route. It argues that because the statute of conviction applies extraterritorially, so should all the potential sentencing enhancements under the Guidelines. This does not follow.

The crime of conviction was conspiracy to import drugs *into the United States*. Plainly, the United States and its citizens were the intended targets. In that context, the extraterritorial application is straightforward. But it does not follow that all foreign acts during the conspiracy – even if not aimed at the United States – should also be used to enhance the sentence.

On the contrary, if the acts did not impact the United States or any United States victim, there is no reason our system should penalize that conduct. We are not the world's police or judiciary. As the court put it in *United States v. Chunza-Plazas*, 45 F.3d 51, 57 (2d. Cir. 1995), the defendant's "illegal activities in Colombia were not crimes against the United States, and therefore should not be included in the guideline calculation." *Id.* at 57. This Court made a similar point in *United States v. Flores*, 912 F.3d 613, 621 (*Flores I*) (D.C. Cir. 2019), finding the district court erred by considering the defendant's alleged "murder of a Mexican national in Mexico when calculating his sentence under the Sentencing Guidelines." AOB:43-45 (discussing *Flores I*).

The government urges the Court to bypass this precedent. GB:62-66. It points to out-of-circuit decisions, holding that "when a court sentences a defendant for a domestic child pornography offense, it may consider related foreign conduct—such as the foreign production or distribution of the pornography—to determine the gravity of the domestic offense." GB:59. Those cases, however, arose in an entirely different framework.

They were all convictions for domestic conduct – i.e., conduct the

defendant committed *inside* the United States. *See, e.g., United States v. Spence,* 923 F.3d 929 (11th Cir. 2019). And the foreign acts at issue, such as producing and distributing the contraband, were inextricably intertwined with the conduct of conviction. *See id.* That is, the defendants produced or distributed the contraband abroad before possessing it in the United States. *See id.*

Here, the conduct of conviction was the agreement to import drugs into the United States. The court made no specific finding that the gun and violence enhancements were based on conduct undertaken to protect the Mexico-United States drug trafficking routes.[6] As such, unlike the cases cited by the government, there was no direct connection between those specific acts and the United States.[7]

---

[6] For this reason, as previously discussed, this case is also distinguishable from *United States v. Flores*, 995 F.3d 214, 222 (D.C. Cir. 2021) (*Flores II*). AOB:49-51. The government cites the district court's comment that Mr. Gonzalez-Valencia's "overt acts in furtherance of the conspiracy, although occurring in Mexico, had direct consequences in communities around this country *with the importation of drugs and the harm that that causes here.*" JA1512. But the court was talking about his *overt acts* of importing drugs into the United States, not the tangentially connected foreign conduct related to guns or violence that are at issue with the enhancement.

[7] The opening brief acknowledged the "distinction between the[] [gun and violence] enhancements and the offense level calculations tied to the drug

Accordingly, that precedent cannot control the analysis here. Far more helpful are well-established interpretation tools, such as the presumption against extraterritoriality and the doctrine of negative implication.

Under the presumption against extraterritoriality, "[a]bsent clearly expressed congressional intent to the contrary, federal laws will be construed to have only domestic application." *RJR Nabisco, Inc. v. European Cmty.*, 579 U.S. 325, 335 (2016). Here, neither the gun and violence enhancements nor the relevant conduct provision indicate that they are intended to apply to purely foreign conduct. They are silent on the subject. Thus, it should be presumed these provisions do not apply to purely extraterritorial conduct. *See id.*

The government says the presumption is inapplicable to the Guidelines, but this Court has never reached that conclusion. Nor

---

quantity and his role in the conspiracy to import drugs into the United States. Those are arguably direct parts of the offense against the United States – the importation[.]" AOB:45 n.9. In this way, the drug quantity and role enhancements are analogous to the distribution and production increases the government cites. But the gun and violence enhancements, which the district court did not link to any harm in the United States, were not part of the importation crime.

should it.    And in any event, the government misunderstands Mr. Gonzalez-Valencia's argument.  He does not claim the presumption is determinative; he claims it weighs in favor of his Guidelines argument.  AOB:46-47.  Plainly, it does.

So too does the doctrine of negative implication.  *See Copeland v. Ryan*, 852 F.3d 900, 907 (9th Cir. 2017) ("Under the maxim of expressio unius est exclusio alterius, there is a presumption that . . . all omissions should be understood as exclusions.").  The Sentencing Commission knows how to make a Guidelines provision extraterritorial when it wants to.  *See, e.g.*, 2B1.1(b)(10)(B) (providing a two-level increase when "a substantial part of a fraudulent scheme was committed from *outside the United States*.").  It also knows that drug trafficking is a cross-national enterprise.  The Commission's choice not to mention foreign conduct in either of the sections at issue (or the relevant conduct provision) further reinforces the conclusion that such conduct should not be used to calculate the offense level.[8]

In the final analysis, "there will be instances when a district court's

---

[8] This is not to say the district court would be precluded from considering the conduct in its overall analysis under section 3553(a).  But that does not mean the conduct can be used to increase the offense level.

32

sentencing of a defendant within the framework of an incorrect Guidelines range goes unnoticed by the parties as well, which may result in a defendant raising the error for the first time on appeal." *Rosales-Mireles*, 585 U.S. at 134. That is what happened here. And because Mr. Gonzalez-Valencia was sentenced under an incorrect Guidelines range, the error satisfies the remaining plain-error requirements. *See id.* at 138. The remedy is resentencing.

## VI.
## Conclusion.

In exchange for giving up his fundamental rights to a jury, pleading guilty, and accepting responsibility for his crimes, Mr. Gonzalez-Valencia received the worst possible outcome. Had he proceeded to a jury trial, mounted a lengthy defense, and preserved all his appellate rights, his sentencing exposure would have been no more severe than the life term imposed. The government thinks this does not matter, but it certainly should. A plea bargain with no benefit is no bargain at all.

Without this Court's intervention, the result of Mr. Gonzalez-Valencia's guilty plea will be that he "spend[s] the rest of his life in prison; a death sentence of a different kind." *United States v. Surratt*, 797 F.3d 240, 270 (4th Cir. 2015) (Gregory, J. dissenting). He can earn no good-

time credits. He cannot qualify for early release under the First Step Act, despite being a United States Citizen. He can never be considered for a halfway house. Nothing. His only lot is to die in prison. And it is "the harshness of [this] life sentence . . . [that] highlights the need for rigorous inquiry" on appeal. *United States v. Lombard*, 72 F.3d 170, 178 (1st Cir. 1995).

Based on that rigorous inquiry, the Court should vacate Mr. Gonzalez-Valencia's sentence or at least order a limited remand under section 2106. The insult to Uruguay's judiciary in failing even to *consider* its opinion on such a harsh sentence only compounds the injury. A just result requires a just process.

Respectfully submitted,

December 10, 2024

 *s/ Devin Burstein*
Devin Burstein
Warren & Burstein
501 W. Broadway, Ste 240
San Diego, CA 92101
(619) 234-4433

34

## CERTIFICATE OF COMPLIANCE

Certificate of Compliance with Type-Volume limit, Typeface Requirements, and Type-Style Requirements:

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B).

This document contains 6,489 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because:

This Brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-pt Century font.

*s/ Devin Burstein*
Devin Burstein
Warren & Burstein
501 W. Broadway, Ste 240
San Diego, CA 92101
(619) 234-4433

CERTIFICATE OF SERVICE

I certify that on December 10, 2024, I caused to be filed a copy of the foregoing Appellant's Opening Brief with the Clerk of the Court via the Court's Electronic Case Filing System, which electronically served them upon the following:

Katherine Twomey Allen
Attorney, Appellate Section
Criminal Division
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530
katherine.allen@usdoj.gov
(202) 616-1935

USAO Appellate Counsel
Firm: 202-252-6829
Email: USADC.ECFAppellate@usdoj.gov
U.S. Attorney's Office, (USA) Appellate Division
601 D Street, NW
Washington, DC 20530

*s/ Devin Burstein*
Devin Burstein
Warren & Burstein
501 W. Broadway, Ste 240
San Diego, CA 92101
(619) 234-4433
